The next case call for oral argument is People v. Barnes. Good afternoon. May it please the Court. My name is Alexander Munches. I'm with the Office of the State Appellate Defender and I represent Dontrell Barnes. At the age of 17, Dontrell Barnes robbed his neighborhood gas station in Murfreesboro, Illinois. He carried an unloaded revolver. When the clerk opened the register, he placed this revolver on the counter before the clerk and emptied the cash tray into a backpack. He then picked up the revolver and left. This robbery lasted between one and two minutes, and the police arrested him a few minutes after that. Dontrell ultimately received a 22-year sentence, which is the sum of a 7-year Class X sentence and a 15-year automatic firearm add-on. He appealed, and during the pendency of his appeal, Section 545105 became effective. The statute grants trial courts the discretion to decline to impose otherwise applicable firearm add-ons to juveniles. This appeal concerns the constitutional effect of this law on Dontrell's sentence. More specifically, Dontrell argues that, following the enactment of the statute, the automatic imposition of a firearm add-on violated the proportionate penalties clause as applied to him. Now, a violation of the proportionate penalties clause occurs if the punishment is so wholly disproportionate to the offense as to shock the moral sense of the community. This is essentially a value judgment, or moral question, that requires the court to review the gravity of the offense in connection with the severity of the statutorily mandated sentence and all within our community's evolving standard of decency. So the elements this court looks at are the facts of the case, statutory text, and this court's judgment. It's the court's own judgment, that is. And the key, really, to this test is the evolving standard of decency. Courts have never defined that. The Illinois Supreme Court says, as our society evolves, so too do our concepts of elemental decency and fairness, which shape the moral sense of the community. Now, this appeal presents a seemingly novel argument about the evolving standard of decency in Illinois. Specifically, Dontrell argues that a juvenile sentencing statute incorporating Illinois' own understanding of Miller, Graham, Roper, and others should also inform this court's understanding of our evolving standard of decency, that is, even if it becomes effective during the pendency of a direct appeal. Now, Dontrell cites Griffith v. Kentucky, that proposition. It's a case in which the U.S. Supreme Court will go to federal courts and state courts that it violates basic norms of constitutional adjudication to deny equal treatment across cases. To see why, this court should look to the text of Section 545.105. Now, this particular subsection, B, abolished the automatic application of firearm enhancements to juveniles. And in doing so, it rejected any former penological justification for automatically punishing children like adults. Now, one other thing that this section has done. Do you think this is similar to the sentencing statutes that are being amended today, where you can't mandatorily sentence a juvenile to life? Do you think that this is part of that evolving public policy? I think so, Your Honor. I think this court will see in People v. Hunter and People v. Holman, the Illinois Supreme Court's most recent decisions in this area of law, that the General Assembly is actively trying to incorporate this area of the law into juvenile sentencing. And that's not a mistake. As the Illinois Supreme Court is fond of saying, Illinois leads the nation in juvenile justice issues. And what's, I think, particularly remarkable about this statute is that it actually leaves room open for this court's discretion. So if you look at that subsection, B, People v. Hunter noted that it's intentionally silent regarding retroactivity. So the Illinois Supreme Court had to look to the statute on statutes to decide, well, should Subsection A apply retroactively or not? And what they said was, well, it sort of depends. So there's no retroactive application if you're analyzing under the mitigation portion of the statute on statutes. However, retroactive application is okay if the juvenile elects for it at a retrial. If the juvenile elects for it at a retrial. And so the statute is actually serving Bill 1. And I think that this court should take that as a signal that the legislature is looking to work with the court. That is, it's a joint enterprise between the courts and the legislature in a state that we are fond of saying leads the nation on juvenile justice issues. Are you basically asking for a vacation of the sentencing and remand for resentencing? A remand for resentencing. What we're asking for is exceedingly narrow, namely a new sentencing hearing at which the trial court may exercise its discretion. Simply exercise discretion. I think under the resentencing statute, there would be a cap of 22 years, unless Don Triell has done something bad in prison since then. But, yes, just to recap, a cap between 6 and 22, which the trial court may either impose 22 just under the Class X portion, or decline to impose the 15 add-on and say impose just the 7. But somewhere between 6 and 22 at a resentencing hearing. If we were to give you a hypothetical, if we were to vacate and remand, and remand the circuit court in its discretion, would that be an abuse of discretion? It would not. The issue in this particular appeal is the interplay between our evolving standard decency and the sort of stripping of the trial court's discretion when that first sentencing hearing occurred. And so we're simply asking for a new sentencing hearing at which the trial court may exercise its discretion. In Illinois, we've long held that age is not just a chronological fact. It's a multifaceted set of attributes that carry constitutional significance. The facts of this case, in our view, call out for resentencing under this new statute. Although the offense Don Triell committed was a serious one, the circumstances of the case undercut the general severity of the conduct. He used an unlimited gun. He had no prior criminal history. He has a supportive family and network. At sentencing, he expressed remorse. In allocution, he apologized. He empathized with the gas station clerk. He explained that he learned from his mistakes. Don Triell also asked to be placed on drug and alcohol treatment. This is a remarkably unmanned. I mean, those are not the factors that we're to consider in this appeal, right? Correct. What we're saying simply is that at resentencing, there's a real possibility that the court will exercise its discretion in a way that will positively affect Don Triell's life. Don Triell does not argue that, as a matter of constitutional law, the trial court may not impose a firearm enhancement at resentencing. That is not his argument. Rather, Don Triell argues that given the circumstances of the offense, his personal characteristics, there's a real possibility the trial court will resentence him less harshly, if not bound by this former sentencing statute. Respectfully, Don Triell asks that this court remain for resentencing. The trial court may exercise that discretion and may otherwise decline to impose a firearm enhancement. With the 6 to 22 years, that was discretionary, wasn't it? The 7 years was discretionary and the 15 was automatic. And I think that under the resentencing statute, the cap would be a 22. Right. But so I'm not clear why we would vacate the entire sentence as opposed to just the automatic imposed sentence. On what basis would we vacate the entire sentence? Well, I think that the record does not demonstrate definitively how the sentence was calculated, in the sense that would the trial court have only imposed the 7 years and not imposed the 15? Or did he think that the 15 was otherwise, if he had his discretion, that he could impose it? We think that there's an open question there. Well, I see the open question on the 15 years because that was mandatory and you're following kind of that philosophy of, well, the trial court should have had some discretion. But the 6 to 22 years span, the trial court clearly did have discretion. I think that's correct. I think that we misspoke. I think that it would be a good argument that the lower bound would be 7 as opposed to 6, but that even with this bound, we don't know whether or not the trial court would have exercised discretion to decline to impose this firearm enhancement or would have sort of, you know, shifted somewhere between the range of 7 and 30 otherwise. Are there no further questions? I don't believe there are. Thank you. Thank you, counsel. Counsel?  Yes, I have, Your Honor. Your Honors, counsel, may it please the Court. Kelly Stacey, appearing for the State. In the defendant's reply brief, he acknowledges that even if this case would be remanded for resentencing, the trial court could still impose the 15-year firearm enhancement. The defendant points out that he apologized to the store clerk. I agree that that did happen at the sentencing hearing, that he has helped people at church, and that he had no prior adjudications or convictions. I also agree that he obtained his GED and has a supportive family life. But don't you think that's probably why he got the 7 years as opposed to the higher end of the sentencing? I would have to agree with that assessment that that is probably why he got the 7 over end. I go back to my last question, which is the only thing that was mandatory here was that 15 years extension because of the firearm. And what do you think about the argument that because of his age, his tender age, which now we're recognizing, you know, there are issues to be concerned with, what about that, that the court should be able to take that into consideration, all those factors on this back end? I think the Hunter case that we both addressed on the supplemental briefing has concluded that the statute does not apply retroactively. So the only way I think that this gets reached by this court is if there is a finding that the sentence violates the proportion of penalty scars. And that would necessitate a finding by this court that the sentence is so cruel, degrading, or disproportionate to the offense that the sentence shocks the moral sense of the community. I agree with many of the statements that opposing counsel made on the evolving sense. And I think it does apply to, as Justice Cates mentioned, the Miller case, how we're viewing younger offenders and when does the brain stop wiring and when do they have those adult, the adult ability to be able to determine the consequences of their action. But in this case, in looking at the seriousness of the offense, what we have is the defendant pointed a weapon at a store clerk. He demanded money and told her he would shoot her. He told her if she did not turn over the money, she would be hurt. He did have the wherewithal to conceal his identity during the armed robbery. He wore a mask. And although he argues the gun was not loaded, there would be no way for a person on the other end of that gap to know whether or not it was loaded. And her testimony was she believed this was a fully operational gun and wouldn't have had any reason to think it was not loaded. She suffered severe anxiety and had panic attacks. I understand the defendant's argument that he did this to obtain peer approval. But there's also some information in the record that he opposed for photographs with the gun and maybe to try to post that on social media. I don't fully understand that whole social media component. It's something I've just gotten into in the last year, but I don't oppose with weapons. But along those same lines, this defendant acted alone in carrying out that robbery. It shows that there was planning on his part and not an impulsive act. We agree that if this court does find that this particular sentence shocks the moral sense of the community, that the case would go back to the trial court for resentencing. I think Justice Gates raises an interesting question as to where would the sentencing have to fall. I know it would not need to be increased, but I don't have a definite answer beyond that. In any event, if I have no further questions from the panel, the State would ask you to find the sentence imposed was not unconstitutional as applied to this defendant.  Thank you, Your Honor. Thank you, counsel. Counsel, any rebuttal? So I think what's clear from this record and from the State's acknowledgments in this court's questions are that Don Terrell is not an incorrigible youth. No. He is a typical young person who made a very bad decision, but under the law of Illinois, for the youth, retribution is diminished by his reduced blameworthiness. Deterrence is not furthered because he is less likely to consider potential punishment. And the goal of incapacitation and rehabilitation are negated because he is not incorrigible. All of these factors that you're talking to us about with regard to this young man, are we to consider those when we talk about the constitutional proportionality clause? I mean, is this a question of law that's before us? Certainly. Or is this a mixed question? Certainly. And I consider this first statement sort of the brush clearing. Basically, Don Terrell is definitely not an incorrigible youth. Brush clearing. I like that. What does that mean? Just the idea that, you know, to put it in really stark terms, if under Millard, Graham, and Roper, children who kill multiple people should receive new sentencing years, the facts of this crime are far less severe and do not demonstrate, on the face of the record, incorrigibility by any means. So what about Hunter that says this statute's not retroactive? So I think Hunter says it's a nuanced holding. So Hunter says that Section B is intentionally silent. That's a quote, intentionally silent on retroactivity. And so the Illinois Supreme Court looked at the statute on statutes. And under the statute on statutes, what we found is that it was ambivalent on retroactivity, namely if you analyze it under the mitigation line of cases, no retroactive application. However, the statute on statutes approves of the application of the statute following a retrial and resentencing. So I think what that tells us is that the General Assembly is intentionally silent in subsection B. They're signaling to this Court this is a joint enterprise. We have seen Millard, Graham, Roper. We know that our statutes have not got it done, and we know the Illinois Supreme Court keeps finding as applied and facial challenges to these statutes, and we are now opening this up to the Court. And under Leon Miller, we know that this Court is supposed to exercise its own judgment about the evolving standard of decency. So I don't think that Hunter forecloses this claim at all. I think, on the contrary, it opens up room for this Court's discretion. So I think I'm just going to conclude by saying Dr. L is asking for exceedingly narrow relief in two ways. He wants a resentencing hearing at which the trial court may exercise its discretion. And he's asking for a type of relief that is not going to open up the floodgates of litigation. The types of cases that meet this requirement are where the defendant was less than 18, where a firearm add-on was at issue, and where the direct appeal was pending on January 1, 2016. These are a very narrow set of cases. And Dr. L asks that you simply get that resentencing hearing in which the trial court can exercise its discretion, all in accord with Illinois' evolving standard of decency. If there are no further questions. I believe there are. Thank you, counsel. Thank you. We appreciate the briefs and arguments of counsel. We'll take the case under advisement, issue a ruling in due course. Thank you.